The rule at common law was, that if lands were conveyed to one person, the consideration for which was wholly paid by another, a trust resulted in favor of the person who paid the price. Such a trust, being raised by implication of law, was held not to be within the statute of frauds, and it was also held that under the former statute of uses, (] R.L., 74, § 4,) the interest of thecestui que trust could be seized and sold as a legal estate on execution against him. (Foote v. Colvin, 3 John., 216;Jackson v. Bateman, 2 Wend., 570; Guthrie v. Gardner,
19 id., 414; Jackson v. Walker, 4 id., 462.) In the present case, the plaintiff's title depends on the same rules, if they still exist, and the question has been determined in his favor by the court below, in accordance with the decision of the former Supreme Court in Wait v. Day (4 Denio, 439), but opposed to the views of the late Court of Chancery, as stated inBrewster v. Power (10 Paige, 569.) After an attentive consideration, I am brought to the conclusion that the decision is erroneous.
Our present statute "of uses and trusts" (1 R.S., 747), has made several very important changes in the law, and among them, I think, it has subverted the rules and principles which have just been stated. Under the old law the person who paid the consideration money had an estate in the land, by way of resulting trust, and the grantee in the conveyance who had paid nothing had no interest. I mean of course, no actual interest, without inquiring whether he held the formal legal title. Such was the relation between the grantee and the person who paid the purchase money; and the right to sell the land on judgment and execution against the latter, was the result of that relation. This was true, even when the transaction was intended to defraud creditors. In such cases the creditor could take the land in execution through the resulting trust, although, perhaps, neither courts of law nor equity would aid the cestui que trust for his own sake. His own inability to arrest a fraudulent *Page 478 
trust did not affect the principle. The creditor, where the whole equitable interest was in his debtor, took the land, not through or by means of the fraud, but irrespective of it, and through the trust which the law implied.
Now this relation between the grantee and the person paying the purchase money appears to me to be entirely overthrown by the present statute of uses and trusts. It is declared (§ 51), that "when a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another,no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section." The next section (§ 52), declares that "every such conveyance shall be deemed fraudulent as against the creditors at the time of the person paying the consideration; and where a fraudulent interest is not disproved a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands."
Now, it appears to me that this language is free from all ambiguity. The resulting trust of the common law is abrogated in the most explicit terms. The person paying the consideration money must take the conveyance to himself, or he can have no legal or equitable interest in the land. The very foundation, therefore, of the right, which the creditor had to take the land in execution, fails; but in place of that right, and of the common law principles on which it depended, the statute has declared a presumption of fraud, and, through the fraud, a resulting trust, not in favor of the debtor, but of the creditor only. There is no interest, legal or equitable, in the debtor, and therefore nothing to which a judgment and execution can attach; but instead of this there is a pure trust in favor of the creditor, which the statute impresses upon the legal estate in the hands of the grantee in the conveyance, and which can be enforced in equity only. *Page 479 
In the case mentioned, of Wait v. Day, the statute was construed as though it read, "a trust shall result to thedebtor, in favor of the creditor;" and the conclusion was reached by applying to the supposed trust "to the debtor" the previous section (§ 45), declaring that "uses and trusts, except as authorized and modified in that article, are abolished, and that every estate and interest in lands shall be deemed a legal right, cognizable as such in the courts of law, except when otherwise provided" in that chapter of the Statutes. This reasoning appears to me to be defective. I see no authority for interpolating the words, "to the debtor," in the fifty-second section. The trust there mentioned results not to the debtor, but in favor of the creditor. A trust to a person is a trust in his favor, and so a trust in favor of a person is a trust to him. These terms, in their ordinary meaning, are entirely convertible. When the legislature said that a trust shall result in favor of the creditor, they meant to declare just such a trust as they specified and no other. The statute recognizes only one trust, one trustee and one cestui que trust. The trustee is the grantee in the deed where the land is paid for by the debtor, and the cestui que trust is the existing creditor. According to the interpretation in Wait v. Day, there are two trusts, two trustees and two beneficiaries. The grantee in the conveyance is a trustee, and so is the debtor, because a trust, it is said, results to him for the creditor. He is, according to this, the trustee of a trust. He is also the beneficiary in the trust to him, and the creditor is also, in the trust for him or in his favor. I do not think the statute has thus involved the subject. It declares, in very simple terms, a trust for the benefit of creditors, and there it stops. The common law resulting trust is expressly abolished by the previous section (§ 51), and there is nothing for the creditor to look to except the statutory trust in his own favor, declared in this section *Page 480 
fifty-two. He stands by the express terms of the statute upon that trust, and not upon one to or for his debtors.
Section forty-five, it is true, turns every estate and interest, except as otherwise provided, into a legal right; but the debtor has no interest at all, and therefore there is nothing to be transformed. If upon sections fifty-one and fifty-two we could say there is still a resulting trust to the debtor or person paying the purchase money, then indeed section forty-five might transform it into a legal estate but for another difficulty: the intermediate fiftieth section declares that "the preceding sections (including forty-five) shall not extend to trusts arising or resulting by implication of law." Section forty-five therefore relates only to unauthorized express trusts; in other words, such as are created or declared by some deed in writing. The trust in question is not of that character, whether it be regarded as resulting to the debtor or to the creditor. This proved clearly that section forty-five cannot be invoked to turn this trust into a legal estate. I see, in fact, no way to escape an inference in the opposite direction. The present statute of uses undoubtedly takes the place of all previous legislation on the subject of uses and trusts. The intention of the revisors and of the legislature was to frame a new and complete system. Now, let it be supposed, for argument's sake, that the trust under consideration results to the debtor who paid the purchase money, or, according to Wait v. Day, "to him for the creditor;" that it is, in short, like the old common law resulting trust. The question then arises, where is the authority for selling such a trust on execution? The forty-fifth section, as we have seen, does not turn it into a legal estate, and we shall look in vain for any other provision in the statute of uses which has that effect. On the contrary, section fifty justifies the conclusion that no implied trust undergoes this transformation. *Page 481 
In general, mere trusts, whether express or implied, are not cognizable at law, and are not the subject of sale on execution. A statute may execute the use declared in the conveyance, and vest the legal estate in the cestui que use. Our former statute of uses (1 R.L., 72) did this, without, in terms, discriminating between uses or trusts expressed and those implied by law. Whether that statute executed the resulting trust in cases like the present, so as to vest the legal title in the beneficiary, as between him and the trustees, is not perhaps an inquiry of any importance. The present statute, as we have seen, does make this discrimination in the very terms of sections forty-five and fifty. So the old statute (§ 4) declared it should be lawful for sheriffs to sell, under execution, lands held "to the use or in trust" for the party against whom the process was issued, without any discrimination between express and resulting or implied trusts; and it also declared in terms that the purchaser should acquire by such sale a good and perfect title. But the present statute concerning executions (2 R.S., 368, § 26) declares that "lands, c., holden by any one in trust for the use of another, shall be liable to judgments, executions, c., against the person to whose use they are holden, in the cases and in the manner prescribed" in the statute of uses; thus adopting the very discriminations of that statute. By the terms "in the cases and in the manner," c., a direct reference is made, I think, to section forty-five, which, as we have seen, executes all uses and trusts so as to vest the legal title in the beneficiary, with the fundamental exceptions, contained in section fifty, of all resulting and all authorized express trusts. The statute quoted, concerning executions, is unintelligible, unless it has this reference and meaning; and it follows that a resulting trust, even if we could find one to exist in this case analogous to the old common law trust in like cases, is no longer the subject of legal cognizance.
The judgment should be reversed and a new trial granted. *Page 482